1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

GEORGE CASTILLO, on behalf of himself and all others similarly situated,

Plaintiff,

v.

ALERE NORTH AMERICA, INC., a Delaware corporation; ALERE, INC., a Delaware corporation; ABBOTT LABORATORIES, INC., an Illinois corporation; and DOES 1-50, inclusive,

Defendants.

Case No.:  3:21-cv-01519-RBM-SBC

**ORDER DENYING MOTION TO COMPEL ARBITRATION**

**[Doc. 54]**

Currently pending before the Court is an October 21, 2022 motion to compel arbitration filed by Defendants Alere North America, Inc., Alere, Inc., Abbott Laboratories, Inc., and Abbott Rapid Dx North America, LLC ("Defendants").  (Doc. 54 ("Mot.").)  Plaintiff George Castillo ("Plaintiff") (collectively, "the Parties") filed a brief in opposition to the motion on November 7, 2022.  (Doc. 60 ("Opp.").)  Defendants filed a reply on November 14, 2022.  (Doc. 61 ("Reply").)  The Court finds the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1).

1

For the reasons discussed below, Defendants' Motion (Doc. 54) is **DENIED**.

## I.      BACKGROUND

In June 2007, Plaintiff became an employee of third party StaffWorks, LLC ("StaffWorks").  (Doc. 54-5, Declaration of Joan Milana-Slater ("Milana-Slater Decl.") ¶¶ 3–4; Doc. 60-2, Declaration of Plaintiff George Castillo ("Plaintiff Castillo Decl.") ¶ 3.) StaffWorks is a temporary staffing company that recruits and hires contract employees to work on temporary assignments with StaffWorks' clients.  (Milana-Slater Decl. ¶ 2.)  On April 19, 2007, Plaintiff executed a document titled "StaffWorks, LLC Mandatory Arbitration Agreement."    (Doc. 54-6, Ex. A to Milana-Slater Decl. ("Arbitration Agreement").)   The Arbitration Agreement states Plaintiff agreed, in connection with his employment with StaffWorks:

> that any dispute or controversy [. . .] between myself and StaffWorks (or its owners, partners, directors, officers, employees and parties affiliated with its employee benefit and health plans) arising from, related to, or having relationship or connection whatsoever with my seeking employment with, employment by, or other association with StaffWork [. . .] shall be submitted to and determined by binding arbitration[.]

(Arbitration Agreement at 1 (emphases omitted).)  Plaintiff's signature appears at the end of the Arbitration Agreement.  (*Id.*)

Upon commencement of his employment with StaffWorks, Plaintiff was assigned to work as a contingent worker at Innovacon, Inc. ("Innovacon") and/or Defendant Alere North America, Inc.  (Milana-Slater Decl. ¶ 3; Doc. 54-5, Declaration of Sheryl Hoover ("Hoover Decl.") ¶ 6; Plaintiff Castillo Decl. ¶ 3.)[1]  On July 25, 2008, following the completion of his contract assignment, Plaintiff was hired as a full-time employee at

---

[1] Plaintiff asserts that he resigned from StaffWorks in October 2007 before he again applied and was re-hired by StaffWorks in February 2008, where he was re-assigned to work at Innovacon.  (Plaintiff Castillo Decl. ¶ 5.)  Plaintiff also asserts that, upon his re-hiring in February 2008, he did not sign a new arbitration agreement with StaffWorks.  (*Id.* ¶ 6.)

2

Innovacon and/or the entity that acquired Innovacon, which after a series of acquisitions, conversions, and/or name changes, later became Defendant Abbott Rapid Dx North America, LLC.  (Doc. 54-4, Declaration of Mona Oliver ("Oliver Decl.") ¶¶ 3–4.)

Defendants operate medical supply facilities in California.  (Doc. 53, First Amended Complaint ("FAC") ¶ 17.)  Plaintiff worked for Defendants as a Medical Handler from June 7, 2007[2] through October 2020.  (*Id.* ¶ 27.)  Plaintiff filed this putative class action in May 2021.  (*See* Doc. 1-2.)  Plaintiff alleges "Defendants consistently maintained and enforced against its Non-Exempt Employees unlawful practices and policies in violation of California state wage and hour laws."  (FAC ¶ 2.)  The FAC alleges nine claims: (i) failure to pay wages; (ii) failure to pay overtime; (iii) failure to provide rest periods; (iv) failure to provide meal periods; (v) failure to timely pay wages during employment; (vi) failure to timely pay wages upon separation; (vii) failure to comply with wage statement laws; (viii) failure to reimburse business expenses; and (ix) violation of California's Unfair Competition Law, California Business and Professions Code §§ 17200 *et seq.*  (*See id.* ¶¶ 54–130.)

In his factual allegations, Plaintiff alleges that during the relevant timeframe, "Defendants compensated Plaintiff and the Non-Exempt Employees based upon an hourly wage" and that members of the putative class, including Plaintiff, "worked as non-exempt employees for Defendants." (*Id.* ¶¶ 25, 29.)  Plaintiff alleges he and the class members were and are "all subject to Defendants' uniform policies and systemic practices specified herein." (*Id.* ¶ 32.)  Plaintiff alleges he and class members "were not properly compensated for all hours worked, in part because they were frequently required to work off the clock" and "frequently worked in excess of eight (8) hours a day and/or over forty (40) hours in a workweek, but were not properly paid for such time at a rate of time and one-half (1.5) the employee's regular rate of pay per hour." (*Id.* ¶¶ 33–34.)

_____

[2] This period includes Plaintiff's initial placement with Innovacon and/or Defendant Alere North America, Inc. as a contract worker employed by StaffWorks.

Plaintiff alleges "Defendants' rounding practices caused failure to properly pay Plaintiff and Class Members for all hours worked." (*Id.* ¶ 35.) Plaintiff alleges "Defendants failed to properly calculate Plaintiff's and the Class Members' regular rate of pay because Defendants failed to include all forms of compensation in the regular rate including bonuses, incentives, commissions, and other compensation." (*Id.* ¶ 36.) Plaintiff alleges he and class members "were regularly required to work shifts in excess of five (5) hours without being provided a lawful, timely meal period and over ten (10) hours in a day without being provided a second lawful, timely meal period as required by law." (*Id.* ¶ 37.)

Plaintiff alleges "as a consequence of Defendants' staffing and scheduling practices, lack of coverage, work demands, and Defendants' policies and practices, Defendants frequently failed to provide Plaintiff and the Class Members timely, legally compliant uninterrupted thirty (30) minute meal periods on shifts over five (5) hours and second (2nd) meal periods on shifts over ten (10) hours as required by law." (*Id.* ¶ 38.) Plaintiff alleges "Defendants failed to compensate Plaintiff" for "one (1) additional hour of pay at their regular rate as required by California law when meal periods were not timely or lawfully provided in a compliant manner." (*Id.* ¶ 42.) Plaintiff alleges "Defendants also failed to provide accurate, lawful itemized wage statements to Plaintiff and the Class Members in part because of the above specified violations" and "Defendants omitted an accurate itemization of total hours worked, all applicable rates of pay, gross pay and net pay figures from Plaintiff and the Class Members' wage statements." (*Id.* ¶ 44.) Plaintiff alleges "Defendants also failed to accurately indicate the name of the entity who was the employer of Plaintiff and the Class Members on wage statements." (*Id.*) Lastly, Plaintiff alleges "Defendants have also made it difficult to determine applicable rates of pay and account with precision for the unlawfully withheld wages and deductions due […] because they did not implement and preserve a lawful record-keeping method to record all hours worked, meal periods, and non-provided rest and meal periods owed to employees as required." (*Id.* ¶ 45.)

At his deposition, Plaintiff testified that he signed onboarding documents prior to

beginning his employment with StaffWorks. (Doc. 54-1, Declaration of Steven Morphy ("Morphy Decl.") ¶ 2.) Defendants then subpoenaed StaffWorks, obtained a copy of the Arbitration Agreement, and asked Plaintiff to voluntarily submit his individual claims to binding arbitration. (*Id*. ¶¶ 3–4.) Plaintiff refused, and the instant motion to compel arbitration followed. (*Id*. ¶ 4.)

Accompanying Defendants' Motion are several declarations of employees of Alere San Diego, Inc., Defendant Alere North America, Inc., Defendant Abbot Rapid Dx North America, LLC, and StaffWorks, LLC. (*See* Doc. 54.) Relevant portions of those declarations are detailed below.

Shyrl Hoover, the Director of Global Talent Acquisitions at Alere San Diego, Inc., and who has been employed by Alere in various capacities over 22 years, submits that Plaintiff was a temporary employee of StaffWorks assigned to perform certain services at one of StaffWorks' partners, Defendant Alere North America, Inc. (Hoover Decl. ¶¶ 1, 3.) Hoover stated that, during Plaintiff's employment with StaffWorks, "Alere contracted with a third-party 'master service provider' called Allegis Group, which is a company that is in charge of 'managing temporary staffing agencies,' like StaffWorks." (*Id*. ¶ 7.) Hoover stated that "Alere views the relationship between Allegis, StaffWorks, and Alere as a three-way partnership, wherein every piece needs to work together to create a successful contingent labor program. StaffWorks partners with Allegis and Alere in order to ensure that candidates are submitted to job postings, that temporary assignments are billed, and that contingent employees are onboarded to assignments and managed properly throughout their assignments." (*Id*. ¶ 8.) Based on Hoover's experience with temporary staffing agencies like StaffWorks, she asserts that the reference to "partners" in the Arbitration Agreement "clearly refers to Alere." (*Id*. ¶ 9.)

Mona Oliver, a Manager, Human Resources at Defendant Abbot Rapid Dx North America, LLC, submits that Plaintiff worked as a contingent worker for Innovacon, "which later became, after a series of acquisitions, conversions and/or name changes, Abbott Rapid Dx North America, LLC." (Oliver Decl. ¶ 3.) Oliver states that after Plaintiff finished his

5

contingent work for Innovacon, "on July 25, 2008, Castillo was hired as a full-time employee at the entity that acquired Innovacon, Inc., and later became, after a series of acquisitions, conversions and/or name changes, Abbott Rapid Dx North America, LLC." (*Id.* ¶ 4.)

Joan Milana-Slater, Branch Manager of StaffWorks, submits that "StaffWorks is a temporary staffing company that recruits and hires temporary (or 'contract') employees to work on temporary assignments at client sites." (Milana-Slater Decl. ¶ 2.) Milana-Slater states that Innovacon "is a former client of StaffWorks, through whom Innovacon obtained staffing services for temporary employees as well as temp-to-hire employees, who to my knowledge were eligible to become permanent employees after the introduction and initial assignment facilitated by StaffWorks ended." (*Id.* ¶ 6.) Milana-Slater states that "StaffWorks was Castillo's employer and initially assigned Castillo to work as a contingent worker for Innovacon." (*Id.*) Milana-Slater asserts that "StaffWorks intended that its arbitration agreement cover claims against StaffWorks and its client "partners" like Innovacon, including its successors and current and subsequent parents and subsidiaries." (*Id.* ¶ 7.) Milana-Slater notes that the Arbitration Agreement contains no terms limiting its application to the period of an employee's temporary employment with StaffWorks, but rather covers claims with any "relationship or connection whatsoever with…[any] other association with StaffWorks." (*Id.* ¶ 8.)

Accompanying Plaintiff's Opposition to Defendant's Motion is a declaration of Plaintiff George Castillo. (*See* Doc. 60.) Relevant portions of that declaration are detailed below as follows.

Plaintiff George Castillo submits that he was hired by StaffWorks in June 2007 and assigned to work at Innovacon. (Plaintiff Castillo Decl. ¶ 3.) Plaintiff Castillo states he resigned from StaffWorks in October 2007 before again applying and working for StaffWorks in February 2008, where he was again assigned to work at Innovacon. (*Id.* ¶¶ 4–5.) Plaintiff Castillo asserts that upon his re-hiring at StaffWorks in February 2008, he did not sign a new arbitration agreement with StaffWorks. (*Id.* ¶ 6.) Plaintiff Castillo

6

states that his last day of employment with StaffWorks was in July 2008, and he was subsequently hired directly by Innovacon as a "permanent employee." (*Id.* ¶ 7.)  Plaintiff Castillo asserts he "did not agree to arbitration of any claims arising out of my employment with StaffWorks with any company other than StaffWorks, including Innovacon or any of its alleged successors." (*Id.* ¶ 9.)  Plaintiff Castillo asserts that it was his understanding that the Arbitration Agreement "would only apply to claims arising out of my employment with StaffWorks" and "would not survive my voluntary termination with StaffWorks such that it would continue to apply to my employment with Innovacon as a permanent employee." (*Id.* ¶ 10 (emphasis omitted).)  Lastly, Plaintiff alleges that "[t]o the extent Defendants contend that they are covered by the term 'partner' in the Arbitration Agreement, which is clearly intended to include a member in a partnership, I did not intend, nor could I have known, that it would include Defendants." (*Id.* ¶ 11.)

## II.    LEGAL STANDARD

Because the Arbitration Agreement is "a contract evidencing a transaction involving commerce," it is subject to the Federal Arbitration Act ("FAA").  9 U.S.C. § 2.  Pursuant to the FAA, contractual arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id*.  "By its terms, the [FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985) (emphasis omitted); *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013).  The district court's role is therefore "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 4; *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719–20 (9th Cir. 1999)).  "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Id*.; *see also* 9 U.S.C. § 4.

7

"The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25 (1983). However, when the question "is not whether a particular issue is arbitrable, but whether a particular *party* is bound by the arbitration agreement. Under these circumstances, the liberal federal policy regarding the scope of arbitrable issues is inapposite." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006).

## III.   DISCUSSION

Defendants are not signatories nor parties to the Arbitration Agreement between Plaintiff and StaffWorks nor do they contend that they are. Thus, the primary dispute between the Parties concerns whether Defendants, as non-signatories to the Arbitration Agreement, may enforce its provisions as third-party beneficiaries and/or whether Plaintiff is equitably estopped from avoiding enforcement of the Arbitration Agreement by Defendants. Before considering those questions, the Court first briefly addresses Plaintiff's evidentiary objections to Defendants' declarations and relevant portions thereof accompanying Defendants' Motion. (*See* Docs. 54, 60-3, 61-1.)

A. Evidentiary Objections

The Court denies Plaintiff's objections to the entirety of the Mona Oliver, Shyrl Hoover, and Stephen Morphy declarations as improperly limiting the declarations under penalty of perjury to the state laws of California under 28 U.S.C. § 1746. Because each of these declarations was executed within the United States, they need not contain the clause "under the laws of the United States of America." *See* 28 U.S.C. § 1746 (1), (2).

The Court denies Plaintiff's objections regarding the declaration of Mona Oliver as lacking foundation, lacking personal knowledge, speculation, hearsay, and vagueness as to time. (Doc. 60-3 at 2–3.) Oliver's declaration is based on her personal knowledge, and by virtue of her role as a Manager, Human Resources, her familiarity with the Defendants as well as access to records pertaining to "employees of Abbott Laboratories and its past

8

and present subsidiaries, as well as contingent workers assigned to these entities." (Oliver Decl. ¶¶ 1–2.) *See Persian Gulf Inc. v. BP W. Coast Prod. LLC*, No. 15CV1749-JO-AGS, 2022 WL 4830698, at *7 (S.D. Cal. Sept. 30, 2022), *appeal dismissed sub nom. Persian Gulf, Inc. v. Chevron U.S.A. Inc.*, No. 22-56010, 2023 WL 566364 (9th Cir. Jan. 11, 2023) ("[T]he Court can infer personal knowledge from the declaration itself, including the declarant's role in the company, the declarant's participation in certain matters, and the declarant's statements that her declaration is based on personal knowledge.") (citing *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990)).  Oliver's declaration is not hearsay.  *See Polanski v. KLM Royal Dutch Airlines*, 378 F. Supp. 2d 1222, 1229 n.7 (S.D. Cal. 2005) ("The declaration does not fit the definition of hearsay under [Federal Rule of Evidence] 801(c), because it is not a statement by another offered to prove the truth of the matter asserted.").  Nor does Oliver seek to authenticate an item of evidence under Rule 801(b).  Oliver's statements are not vague as to time.

The Court denies Plaintiff's objections regarding the declaration of Joan Milana-Slater as vague as to "Business Records", lacking foundation, lacking personal knowledge, speculation, hearsay, improper evidence of routine business practice, and improper opinion.  The Court sustains Plaintiff's objection to sentences two and three of paragraph 5 for lack of proper authentication under Federal Rule of Evidence 901(b)(2).  (Doc. 60-3 at 3–4.)

Milana-Slater's declaration is based on her personal knowledge, review of StaffWorks' business records, and by virtue of her position as a Branch Manager at StaffWorks, review of Plaintiff Castillo's personnel file maintained in the regular course of StaffWorks' business. (Milana-Slater Decl. ¶¶ 1, 3, 4–5.)  *See Mitchell v. Ecolab, Inc.*, No. 1:22-CV-01088-EPG, 2023 WL 2666391 at *4 (E.D. Cal. Mar. 28, 2023) (declaration based on personal knowledge, review of business records, and relevant position lays a proper foundation and establishes personal knowledge as to declaration and attached exhibits) (citing *Wright v. Sirius XM Radio Inc.*, No. SACV 16-01688 JVS (JCGx), 2017 WL 4676580, at *2 (C.D. Cal. June 1, 2017).  Her declaration is not hearsay.  *See Polanski*,

9

378 F. Supp. 2d at 1229 n.7.  Milana-Slater's authentication of the Arbitration Agreement attached as Exhibit A to her declaration is proper under Rule 901(b)(1).

Milana-Slater's statement regarding the authenticity of Plaintiff's handwriting on the Arbitration Agreement is improper under Rule 901(b)(2) as Milana-Slater failed to explain whether her familiarity with Plaintiff's handwriting, derived from her review of Plaintiff's personnel file, was "not acquired for the current litigation."  (*See* Milana-Slater Decl. ¶ 5.)  *Simmons First Nat'l Bank v. Lehman*, No. C-13-02876 DMR, 2015 WL 632393, at *4 (N.D. Cal. Feb. 13, 2015) (citing Fed. R. Evid. 901(b)(2); *United States v. Dreitzler*, 577 F.2d 539, 553 n.24 (9th Cir. 1978)).  Thus, the Court strikes the second and third sentences of paragraph 5 in Milana-Slater's declaration.  In any event, the Court concludes that Plaintiff's signature is contained on the Arbitration Agreement and notes that Plaintiff does not contend otherwise.  (*See* Arbitration Agreement at 1.)  Milana-Slater's statement regarding StaffWorks' intent is not improper lay witness testimony under Federal Rule Evidence 701.  (*See* Milana-Slater Decl. ¶ 7.)

The Court denies Plaintiff's objections regarding the declaration of Shyrl Hoover as vague as to "partners," lacking foundation, lacking personal knowledge, speculation, hearsay, lack of authentication, and improper opinion testimony.  (*See* Doc. 60-3 at 4–5.)  Hoover's declaration is based on her personal knowledge, her position as a Director in Global Talent Acquisition at Alere San Diego, Inc., and her "access to records pertaining to contingent employees who were assigned to Abbott Laboratories and its subsidiaries, including [Defendant] Alere North America, Inc."  (Hoover Decl. ¶¶ 1–2, 7, 9.)  *See Persian Gulf Inc.*, 2022 WL 4830698, at *7.  Hoover's declaration is not hearsay.  *See Polanski*, 378 F. Supp. 2d at 1229 n.7.  Hoover's authentication of the Arbitration Agreement attached as Exhibit A to her declaration is proper under Rule 901(b)(1).  Hoover's statements regarding Alere's views of the relationship between Allegis, StaffWorks and Alere and her experience working with temporary staffing agencies such as StaffWorks is not improper lay witness testimony under Rule 701.  (*See* Hoover Decl. ¶¶ 8–9.)

B. <u>Third Party Beneficiaries</u>

"The United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)). Because the Arbitration Agreement does not contain a choice-of-law provision, (*see* Arbitration Agreement at 1), and no Party has asked the Court to apply any state law other than California, we therefore look to California contract law to determine whether Defendants, as non-signatories, can compel arbitration.

California law states that "[a] contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." Cal. Civ. Code § 1559. Defendants bear the burden of proving that they are third-party beneficiaries of the Arbitration Agreement. *See Garcia v. Truck Ins. Exch.*, 36 Cal. 3d 426, 440 (Cal. 1984). It is not sufficient that a contract results in benefits to a third-party. *See Norcia v. Samsung Telecomm. Am., LLC*, 845 F.3d 1279, 1290 (9th Cir. 2017) ("The mere fact that a contract results in benefits to a third party does not render that party a 'third party beneficiary'") (quoting *Matthau v. Superior Ct.*, 151 Cal. App. 4th 593, 602 (Cal. Ct. App. 2007)). Rather, the Court must interpret "[the] contract to give effect to the mutual intention of the parties at the time they formed the contract." *Camacho v. Target Corp.*, 24 Cal. App. 5th 291, 306 (Cal. Ct. App. 2018) (citing *Hess v. Ford Motor Co.*, 27 Cal. 4th 516, 524 (Cal. 2002); Cal. Civ. Code § 1636).

The Court must "carefully examine[] the express provisions of the contract at issue, as well as all of the relevant circumstances under which the contract was agreed to" to determine "(1) whether the third party would in fact benefit from the contract", "whether a motivating purpose of the contracting parties was to provide a benefit to the third party, and (3) whether permitting a third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties." *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 829–

11

30 (Cal. 2019); *see also* Cal. Civ. Code § 1639 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; subject, however, to the other provisions of this Title."); Cal. Civ. Code § 1647 ("A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates."). In interpreting the contract, words are given their plain meaning, "unless the parties or usage have given the words a specialized or technical meaning." *Camacho*, 24 Cal. App. 5th at 306 (citing *Mountain Air Enters., LLC v. Sundowner Towers, LLC*, 3 Cal. 5th 744, 752 (Cal. 2017); Cal. Civ. Code § 1644)).

At issue is whether Defendants are "partners" as contemplated in the Arbitration Agreement such that they can enforce its provisions as third-party beneficiaries. Because the Arbitration Agreement does not define the term "partners" or specify whether Defendants and/or Innovacon are or were at any time "partners" of StaffWorks, (*see* Arbitration Agreement at 1), the Court begins with the plain meaning of the word "partners" in the agreement.

In relevant part, Merriam-Webster dictionary defines "partner" as (a) "one associated with another especially in action: associate, colleague" or (b) "a member of a partnership,[3] especially in business." Merriam Webster, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/partner (last visited July 10, 2023). Black's Law Dictionary defines "partner" as "[a] member of a copartnership or firm; one who has united with others to form a partnership in business." Black's Law Dictionary, 2nd Ed.,

---

[3] A partnership is defined as "a legal relation existing between two or more persons contractually associated as joint principals in a business" or "the persons joined together in a partnership." Merriam Webster, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/partnership (last visited July 10, 2023). Black's Law Dictionary defines partnership as "[a] voluntary contract between two or more competent persons to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business, with the understanding that there shall be a proportional sharing of the profits and losses between them." Black's Law Dictionary, 2nd Ed., Thelawdictionary.com, https://thelawdictionary.org/partnership/ (last visited July 10, 2023).

Thelawdictionary.com, https://thelawdictionary.org/partner/ (last visited July 10, 2023).

The Court finds that the term "partners" in the Arbitration Agreement is unambiguous and that neither the Defendants nor Innovacon are "partners" of StaffWorks as that term is plainly understood. Neither Defendants nor Innocavon are colleagues or associates of StaffWorks nor members of a partnership business with StaffWorks. Indeed, Defendants have put forward no reliable evidence that they have or Innovacon had any agency, partner, or other contractual relationship with StaffWorks. Rather, Defendants alleged that Defendant Alere, Inc. "contracted with a third-party 'master service provider' called Allegis Group, which is a company that is in charge of managing 'temporary staffing agencies,' like StaffWorks." (Hoover Decl. ¶ 7.) No evidence is presented that Defendants' contract with Allegis Group creates any type of a partnership contract or relationship between StaffWorks and Defendants.

As Defendants appear to acknowledge, they and Innovacon are or were StaffWorks' clients and/or customers. (*See* Doc. 54 at 1, 2, 12; Milana-Slater Decl. ¶¶ 2, 3, 6–7.) In *Garcia v. NRI USA, LLC*, the district court was confronted with a similar arbitration agreement between an employee and a staffing agency and had to decide whether the staffing agency's customer was an "owner[], director[], officer[], manager[], employee[], agent[]" or a "part[y] affiliated with [the staffing agency's] employee benefits and health plans" under the agreement who could enforce it as a third-party beneficiary. *See* No. 217CV08355ODWGJS, 2018 WL 3702293, at *4 (C.D. Cal. Aug. 1, 2018). The district court held that the customer was not a third-party beneficiary because the arbitration agreement was silent as to whether it extends to the staffing agency's customers. *Id.*[4] The Arbitration Agreement at issue here is also silent with respect to any rights or benefits of clients or customers of StaffWorks. (*See* Arbitration Agreement at 1.)

---

[4] The district court also held that the customer was not an "agent" of the staffing agency as there was no evidence in the record of a preexisting confidential relationship between them or evidence that a principal maintained control over the other party. *Id.*

An important distinction between this case and *Garcia* is that the term "partners" was not contained in the arbitration agreement there.  *See* 2018 WL 3702293, at *4.  Yet that is of no moment where the plain meaning of the term "partners" does not include customers or clients.  While this Court finds the term "partners" unambiguous, it also notes that any purported ambiguity in the term "partners" would lead to the same result.  In *Shoals v. Owens & Minor Distribution, Inc.*, the district court confronted the question of whether a staffing agency's customer could enforce the arbitration agreement between the staffing agency and employee against the employee as the staffing agency's "officers, directors, employees, agents or any of the Company's affiliated or related entities" under the agreement.  *See* No. 2:18-CV-2355 WBS EFB, 2018 WL 5761764, at *10 (E.D. Cal. Oct. 31, 2018).  Though the customer argued that it was an "affiliated or related entit[y]", the district court applied the canon of *noscitur a sociis* "which counsels that a word is given more precise content by the neighboring words with which it is associated." *Id.* (quoting *United States v. Williams*, 553 U.S. 285, 294 (2008); *see also Seid Pak Sing v. Barker*, 197 Cal. 321, 341 (Cal. 1925) ("[T]he ancient maxim of *noscitur a sociis* has still some degree of application to the use of the context in determining the scope and meaning of the words, sentences, and clauses of contracts[.]"); *Hipwell v. Pioneer Inv. & Tr. Co.*, 150 Cal. 723, 728–29 (Cal. 1907) (applying *noscitur a sociis* to interpretation of a private contract between the parties); *c.f. Blue Shield of Cal. Life & Health Ins. Co. v. Superior Ct.*, 192 Cal. App. 4th 727, 740 (Cal. Ct. App. 2011) (declining to apply doctrine of *noscitur a sociis* in interpreting insurance agreement's broad language concerning "any other matter arising out of this Plan" in light of a preceding, limited class of damages clause pertaining to benefits or coverage).  The district court reasoned that the terms preceding "affiliated or related entities" covered those who acted on the staffing agency's behalf, not customers or those who do not act at the behest of the staffing agency.  *See Shoals*, 2018 WL 5761764,

14

at *10.[5]

Here, the Arbitration Agreement's terms apply to "StaffWorks (or its owners, partners, directors, officers, employees and parties affiliated with its employee benefit and health plans)." (*See* Arbitration Agreement at 1.) Every term preceding or following "partners" covers those who act on StaffWorks' behalf or assist with its employee benefit and health plans, not its clients or customers, including Defendants and Innovacon.

While the Court does not invoke the *contra preferentem* rule to construe ambiguous language against the drafting party, it notes that defendants' reliance on *Lamps Plus, Inc. v. Valera*, 139 S.Ct. 1407 (2019) for the proposition that the *contra preferentem* rule is preempted by the FAA in the arbitration context is misplaced. (*See* Doc. 61 at 6–7.) In *Valera*, the question was whether ambiguity concerning class arbitration in the arbitration agreement between the *signatory parties to the agreement* was sufficient to undermine the central benefits of arbitration itself. *See* 139 S. Ct. at 1416–17. Within that context, the Supreme Court held that the *contra preferentem* rule "cannot be applied to impose class arbitration in the absence of the *parties'* consent." *Id.* at 1418 (emphasis added). *Valera* concerned interpretation of the arbitration agreement between the signatory parties to the contract, specifically a provision concerning class arbitration. *See id.* at 1416–18. It did not concern the state contract law question at issue here of whether a non-signatory is a third-party beneficiary able to enforce an otherwise valid arbitration agreement.

In addition to the express provisions of the Arbitration Agreement, the Court must also look to the relevant circumstances under which the contract was agreed to in order to determine "(1) whether the third party would in fact benefit from the contract", "whether a motivating purpose of the contracting parties was to provide a benefit to the third party,

---

[5] While Defendants correctly point out that the arbitration agreement in *Shoals* reserved the right to arbitrate exclusively to parties to the agreement, *see id.*, (Doc. 61 at 7, Doc. 61-2, Morphy Decl. ¶ 2), the Court does not find the absence of such a limitation in the Arbitration Agreement at issue here instructive on the question of whether a staffing agency's clients or customers are "partners" as contemplated in the Arbitration Agreement.

15

and (3) whether permitting a third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties." *Goonewardene*, 6 Cal. 5th at 829–30.

For the reasons discussed above, there is nothing in the Arbitration Agreement nor the circumstances under which Plaintiff entered into the agreement with StaffWorks that leads this Court to conclude that Defendants would benefit from the agreement, that such a benefit was a motivating purpose of Plaintiff and StaffWorks' entering into the agreement, and that permitting Defendants to enforce the Arbitration Agreement is consistent with the objectives of the contract and the reasonable expectations of Plaintiff and StaffWorks. *See id.* at 835–37 (finding that, even assuming an employer's hiring an independent payroll company could generally benefit employees, the motivating purpose is to benefit the employer, not the employees, and objectives of the contract and reasonable expectations of the parties did not necessitate employees bringing contract claims against the payroll company where those claims could be pursued by the employer). The motivating purpose of the Arbitration Agreement was to protect "StaffWorks (or its owners, partners, directors, officers, employees and parties affiliated with its employee benefit and health plans)" from any dispute or controversy "arising from, related to, or having relationship or connection whatsoever with [Plaintiff's] seeking employment with, employment by, or other association with StaffWorks," not StaffWorks' clients or customers. (*See* Arbitration Agreement at 1.) Nor would the objectives of the contract or reasonable expectations of the contracting parties be served if Defendants could enforce the agreement as nothing in the agreement evinces an intention to protect parties other than StaffWorks and those who work at the behest of StaffWorks. *See Shoals*, 2018 WL 5761764, at *10. In light of the plain meaning of "partners" and the lack of any ambiguity in the Arbitration Agreement with regard to who it pertains to, the Court is also not persuaded by the Parties' declarations, which aim, in hindsight, to import intentions to Plaintiff and StaffWorks in executing the Arbitration Agreement that are not supported by its text or the circumstances under which it was entered into. (*See* Hoover Decl. ¶¶ 8–9;

16

Milana-Slater Decl. ¶ 7; Plaintiff Castillo Decl. ¶ 9).   Thus, the Court concludes that Defendants are not third-party beneficiaries of the Arbitration Agreement.

Moreover, even if Innovacon could be considered a "partner" of StaffWorks (it cannot), nothing in the Arbitration Agreement assigns the right of "partners" to enforce the agreement or gives such a right to successors in interest.  (*See* Arbitration Agreement at 1.) The Arbitration Agreement is silent with respect to assignment and successors in interest of both StaffWorks itself and StaffWorks' "partners."  (*See id.*)  *See also Ngo v. BMW of N. Am., LLC*, 23 F.4th 942, 946–948 (9th Cir. 2022) (finding non-signatory could not compel arbitration where the parties who could compel arbitration under the agreement only included the signatories and the signatory dealership's assignees, not assignees or affiliates of the signatory dealership's assignee, including the non-signatory defendant); *Safley v. BMW of N. Am., LLC*, No. 20-CV-00366-BAS-MDD, 2021 WL 409722 at *5–6 (S.D. Cal. Feb. 5, 2021) (holding non-signatory could not enforce arbitration provision in sales contract where language covering the signatory dealership's assignees and successors did not include affiliates of the dealership's assignees, including the non-signatory defendant).  Both *Ngo* and *Safley* declined to allow a non-signatory to enforce an arbitration agreement that covered a signatory dealership's assignees, but not the assignees or affiliates of a signatory dealership's assignees.  *See* 23 F.4th at 946–48; 2021 WL 409722, at *5–6. Here, there are simply no rights conferred to any non-signatory assignees, successors-in-interest, or affiliates thereof.  (*See* Arbitration Agreement at 1.)  Nor have Defendants presented any evidence that any of Innovacon's purported rights were assigned to them as part of "a series of acquisitions, conversions and/or name changes."  (Oliver Decl. ¶ 4.)[6]

---

[6] The record is unclear as to whether Plaintiff was assigned to work at Innovacon or Defendant Alere North America, Inc.  (*See* Milana-Slater Decl. ¶ 3; 54-5, Hoover Decl. ¶ 6; Plaintiff Castillo Decl. ¶ 3.)   The record is also unclear as to *when* Innovacon was acquired by any Defendant.  (*See* Docs. 54 at 1 n.1; 54-5, Oliver Decl. ¶ 3.)  In any event, even if Plaintiff was assigned to work at Defendant Alere North America, Inc., this Court

*See Britton v. Co-op Banking Grp.*, 4 F.3d 742, 745–46 (9th Cir. 1993) (finding defendant was not a third-party beneficiary or successor in interest where defendant failed to carry its burden to "prove the validity of his ownership claims" by bringing forth "evidence that the assignor meant to assign rights and obligations under the contracts."); *c.f. Marenco v. DirecTV LLC*, 233 Cal. App. 4th 1409, 1414, 1418–20 (Cal. Ct. App. 2015) (granting non-signatory's motion to compel arbitration where the "evidence is undisputed that [defendant] acquired all of [signatory's] assets, employees, rights, and liabilities.  There is no indication that the original terms of [plaintiff's] employment were modified, superseded, revoked, canceled, or nullified in any manner.").  Thus, even if non-party Innovacon were a "partner" of StaffWorks and Defendants were assigned Innovacon's rights or were Innovacon's successors-in-interest, nothing in the Arbitration Agreement evinces an intention to cover assignees or successors-in-interest.

C. Equitable Estoppel

"Where a nonsignatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement." *Kramer*, 705 F.3d at 1128–29 (internal quotation marks and citations omitted).  Because Plaintiff does not address the second prong nor do Plaintiff's claims rely on the terms of the Arbitration Agreement in asserting claims against Defendants, the Court considers whether Plaintiff's claims are intimately founded in and intertwined with the underlying contract.  In doing so, the Court finds it important to separately analyze the distinct

─────────────────

finds Defendant Alere North America, Inc. would not be a third-party beneficiary of the Arbitration Agreement, for the reasons discussed above.

employment relationships that existed between Plaintiff, Defendants, StaffWorks, and Innovacon from June 7, 2007 through October 2020.  (*See* FAC ¶ 27.)

From June 7, 2007 through about July 24, 2008, Plaintiff was hired by StaffWorks and worked as a temporary employee and contingent worker on assignment at Innovacon or Defendant Alere North America, Inc.  (*See* Oliver Decl. ¶ 3; Hoover Dec. ¶ 3; Plaintiff Castillo Decl. ¶ 3.)[7]  From July 25, 2008 through October 2020, Plaintiff was hired by either Innovacon and/or the entity that acquired Innovacon and later became Defendant Abbott Rapid Dx North America, LLC as a full-time, permanent employee.  (*See* Oliver Decl. ¶ 4; Plaintiff Castillo Decl. ¶ 7).  Before becoming a full-time, permanent employee, Plaintiff completed his contingent work assignment with StaffWorks and ended his temporary employment with StaffWorks in July 2008.  (*See id.*)  The Court considers whether Plaintiff's claims are intimately founded in and intertwined with his employment relationship with StaffWorks during the periods of (i) Plaintiff's temporary employment with StaffWorks, and (ii) Plaintiff's full-time, permanent employment with either Innovacon and/or the entity that acquired Innovacon and later became Defendant Abbott Rapid Dx North America, LLC.

    *i.*    *Temporary Employment with StaffWorks*

With regard to Plaintiff's period of temporary employment with StaffWorks from June 7, 2007 through about July 24, 2008, the Court finds *Franklin v. Community Regional Medical Center* instructive.  *See* 998 F.3d 867 (9th Cir. 2021).  In *Franklin*, the plaintiff— who asserted Fair Labor Standards Act, California Labor Code, and California Business and Professional Code claims—signed an arbitration agreement and assignment contract

---

[7] While Plaintiff asserts that he resigned from StaffWorks in October 2007 before being re-hired by StaffWorks and re-assigned to Innovacon again in February 2008 without signing a new arbitration agreement, (*see* Plaintiff Castillo Decl. ¶¶ 4–6), the Court fails to see how the Arbitration Agreement would not cover claims against *StaffWorks and those operating at its behest* covered under the agreement during the period that Plaintiff had an "association" with StaffWorks.  (*See* Arbitration Agreement at 1.)

with a staffing agency and was assigned to work at a defendant hospital. *Id.* at 869.  The assignment contract with the staffing agency set forth plaintiff's hourly wages, length of shifts, overtime rate and approval by the staffing agency, and the staffing agency's reimbursement policies. *Id.*  The defendant hospital was not a signatory to the arbitration agreement nor the assignment contract. *Id.*  The defendant hospital also did not have a contract with the staffing agency but rather a contract with a managed service provider that contracts with the staffing agency to provide contingent staff to the defendant hospital. *Id.*  Under that contract, the managed service provider billed the hospital and remitted payment to the staffing agency for time worked by contingent employees, who were paid by the staffing agency. *Id.*  The staffing agency also reviewed the defendant hospital's timekeeping system that contingent workers were required to use for any discrepancies, agreed to pay contingent workers for missed meal periods, and agreed to try to collect waivers of second meal periods for its employees. *Id.*

In the absence of a California Supreme Court decision on point, the Ninth Circuit held that it was bound to follow *Garcia v. Pexco*, LLC, 11 Cal. App. 5th 782, (Cal. Ct. App. 2017). *See id.* at 871–74.  The Ninth Court found the facts in *Garcia* similar in that both cases involved employees who signed arbitration agreements with staffing agencies, were assigned to work at the staffing agencies' non-signatory clients, and asserted statutory wage and hour claims. *See id.* at 874–75.  While the plaintiff in *Franklin* did not bring claims against the staffing agency, the Ninth Circuit reasoned that, unlike the plaintiff in *Garcia* who alleged the staffing agency and non-signatory client were jointly responsible for statutory violations, it did not matter that the plaintiff only alleged statutory claims against the non-signatory defendant hospital and not the staffing agency. *See id.* at 875.  Rather, the Ninth Circuit looked to the substance of plaintiff's claims against the non-signatory defendant hospital and whether they were so intertwined with her employment contract with the staffing agency such that it would be unfair for plaintiff to avoid arbitration. *Id.*

The Ninth Circuit found that plaintiff's employment with the staffing agency was

20

central to her claims against the non-signatory defendant hospital because it was rooted in her employment relationship with the staffing agency. *Id.* Specifically, the Ninth Circuit reasoned that the staffing agency was responsible for seeking meal period waivers, compensation for missed meal breaks, compensation for other "off-the-clock" work, and reviewing timekeeping records for discrepancies with the defendant hospital. *Id.* The staffing agency was also responsible for paying plaintiff her wages and any overtime due. *Id.* at 876. The Ninth Circuit noted that plaintiff could "hypothetically sustain her claims even if there were no Assignment Contract, but in that case a factfinder would still need information about how and whether Franklin was paid by [the staffing agency]." *Id.* The Ninth Circuit also noted that it had previously "distinguished between an employment relationship and an employment agreement in declining to compel arbitration." *Id.* at 875 n.10 (citing *Yang v. Majestic Blue Fisheries, LLC*, 876 F.3d 996, 1002–03 (9th Cir. 2017), *abrogated on other grounds by GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637 (2020) (denying non-signatory's motion to compel arbitration and declining to apply equitable estoppel where the plaintiff's complaint alleged an employment relationship between plaintiff and the non-signatory and asserted claims based on the non-signatory's acts and omissions, but did not rely on any obligations created in an employment agreement between the signatories).

Here, the Parties have not alleged any facts that would lead this Court to believe or even suspect that Plaintiff's claims against Defendants arise out of any employment agreement or other obligations on behalf of StaffWorks during Plaintiff's temporary employment relationship with StaffWorks and contract assignment at Innovacon and/or the entity that acquired Innovacon and later became Defendant Abbott Rapid Dx North America, LLC. *See Franklin*, 998 F.3d at 875–76. There is no evidence in the record of an employment agreement between Plaintiff and StaffWorks. Indeed, the record simply reflects that, during Plaintiff's assignment at Innovacon, Plaintiff was at least an employee of StaffWorks. (*See* Milana-Slater Decl. ¶ 6 ("StaffWorks was Castillo's employer and initially assigned Castillo to work as a contingent worker for Innovacon."); Plaintiff

Castillo Decl. ¶ 3 ("During my employment at StaffWorks, I was assigned to work at Innovacon[.]").)

Plaintiff alleges that during the relevant timeframe, including Plaintiff's temporary employment with StaffWorks, "Defendants compensated Plaintiff and the Non-Exempt Employees based upon an hourly wage" and that members of the putative class, including Plaintiff, "worked as non-exempt employees for Defendants."  (FAC ¶ 25, 29.)  Plaintiff alleges that "Defendants' rounding practices caused failure to properly pay Plaintiff and Class Members for all hours worked."  (*Id.* ¶ 35.)  Plaintiff alleges "Defendants failed to properly calculate Plaintiff's and the Class Members' regular rate of pay because Defendants failed to include all forms of compensation in the regular rate including bonuses, incentives, commissions, and other compensation."  (*Id.* ¶ 36.)  Plaintiff alleges that "as a consequence of Defendants' staffing and scheduling practices, lack of coverage, work demands, and Defendants' policies and practices, Defendants frequently failed to provide Plaintiff and the Class Members timely, legally compliant uninterrupted thirty (30) minute meal periods on shifts over five (5) hours and second (2nd) meal periods on shifts over ten (10) hours as required by law."  (*Id.* ¶ 38.)  Plaintiff alleges "Defendants failed to compensate Plaintiff" for "one (1) additional hour of pay at their regular rate as required by California law when meal periods were not timely or lawfully provided in a compliant manner."  (*Id.* ¶ 42.)  Plaintiff alleges "Defendants also failed to provide accurate, lawful itemized wage statements to Plaintiff and the Class Members in part because of the above specified violations" and "Defendants omitted an accurate itemization of total hours worked, all applicable rates of pay, gross pay and net pay figures from Plaintiff and the Class Members' wage statements."  (*Id.* ¶ 44.)  Lastly, Plaintiff alleges "Defendants have also made it difficult to determine applicable rates of pay and account with precision for the unlawfully withheld wages and deductions due […] because they did not implement and preserve a lawful record-keeping method to record all hours worked, meal periods, and non-provided rest and meal periods owed to employees as required."  (*Id.* ¶ 45.)

The record reveals no facts concerning whether it was StaffWorks, Innovacon or

Defendants who set Plaintiff's wage rate, length of shifts, overtime rates, meal periods, rest periods, itemize wage statements, and reimbursable expenses. *See Franklin*, 998 F.3d at 869. Yet the record contains factual allegations that *Defendants* compensated Plaintiff as a non-exempt employee and made acts and omissions, pursuant to Defendants' practices and policies, which underlie Plaintiff's claims. (*See* FAC ¶¶ 35–45.) *See id.* at 876; *Yang*, 876 F.3d at 1002–03. Under these circumstances, the Court finds that Plaintiff's claims are not intimately founded in and intertwined with his temporary employment with StaffWorks.

*Garcia* is also distinguishable from the facts alleged here. *See* 11 Cal. App. 5th 782. While *Garcia* involved an arbitration agreement between a temporary staffing agency and an employee who was assigned to work at a non-signatory client, the question was whether equitable estoppel applied to plaintiff's statutory claims against the non-signatory client. *See id.* at 785–86. Specifically, at issue was whether plaintiff's statutory claims under the Labor Code against the non-signatory client were intimately founded in and intertwined with the underlying arbitration agreement with the signatory temporary staffing agency. *See id.* at 786. The arbitration agreement defined the disputes it covered as "including, but not limited to, those regarding wages, vacation pay, sick time pay, overtime pay, state and federal employment laws and regulations, including but not limited to the Fair Labor Standards Act (29 U.S.C. § 201 et seq.), including the Equal Pay Act (29 U.S.C. § 206 et seq.)." *Id.* at 785–86. The Court of Appeal held that plaintiff's claims against the non-signatory client were rooted in his employment relationship with the signatory temporary staffing agency. *See id.* at 787. The Court of Appeal reasoned that, similarly to the plaintiff in *Boucher v. Alliance Title Co., Inc.*, 127 Cal. App. 4th 262, 272–73 (2005), plaintiff's claims presumed the existence of an employment agreement with the signatory defendant. *See id.* at 787; *see also Boucher*, 127 Cal. App. 4th at 272 (reversing and applying equitable estoppel to plaintiff's claims against non-signatory to arbitration agreement where plaintiff's claims "rel[ied] on, ma[d]e reference to, and presume[d] the existence of" an employment agreement with the defendant signatory, claims were brought against both the

signatory and non-signatory, and plaintiff alleged the non-signatory intentionally or negligently disrupted plaintiff's performance of its employment agreement with the signatory).   The Court of Appeal also reasoned that it would be inequitable to allow plaintiff's statutory wage and hour claims, which plaintiff conceded the signatory temporary staffing agency could compel arbitration of under the arbitration agreement, to proceed against the signatory temporary staffing agency but not against the non-signatory client. *See Garcia*, 11 Cal. App. 5th at 786–87.  That is so where plaintiff's complaint did not distinguish between the signatory and non-signatory in any way.  *Id.* at 787–88.  Plaintiff's claims against the signatory temporary staffing agency and non-signatory client as his joint employers were also based on the same alleged facts.  *Id.* at 788.  Moreover, the Court of Appeal held that the agency exception applied not only because plaintiff's complaint alleged the signatory temporary staffing agency and non-signatory client were acting as agents of one another, but also because plaintiff's failure to distinguish between the defendants and alleged identical claims and conduct against them showed they were agents of each other in their dealings with plaintiff.  *Id.*

Here, *Garcia* is inapplicable where Plaintiff's statutory claims against Defendants are not founded in and intertwined with any employment agreement with StaffWorks or rooted in his temporary employment relationship with StaffWorks.  Beyond Plaintiff not asserting claims against StaffWorks, his claims do not rely on or presume the existence of an employment agreement with StaffWorks.  *C.f. Boucher*, 127 Cal. App. 4th at 272.  As discussed above, Plaintiff's claims are based on allegations pertaining to Defendants' compensation of Plaintiff as a non-exempt employee and Defendants' related practices and policies that impacted that compensation.  (*See* FAC ¶¶ 35–45.)  No facts are alleged that StaffWorks had any role in determining or impacting Plaintiff's compensation.  Nor do Defendants assert that StaffWorks and Defendants are agents of each other.  In fact, the record contains no evidence that either StaffWorks or Defendants are agents of the other, acted on each other's behalf, or maintained any preexisting confidential relationship.  *See Garcia*, 2018 WL 3702293, at *4.  Thus, the Court declines to equitably estop Plaintiff

24

from refusing to arbitrate his claims against Defendants for the period of his temporary employment with StaffWorks.

        *ii.*    *Permanent Employment with Innovacon and Defendants*

Plaintiff became a full-time, permanent employee with Innovacon and/or the entity that acquired Innovacon and later became Defendant Abbott Rapid Dx North America, LLC on July 25, 2008 and continued in that role through October 2020.  (*See* Oliver Decl. ¶ 4; Plaintiff Castillo Decl. ¶ 7.)  Prior to Plaintiff entering this full-time, permanent employment relationship, Plaintiff completed his contingent work assignment with StaffWorks at Innovacon and ended his temporary employment with StaffWorks in July 2008.  (*See id.*)

Defendants contend that the language in the Arbitration Agreement "having relationship or connection whatsoever with" and "other association with StaffWorks" can be broadly construed to extend beyond the period where Plaintiff was a temporary employee at StaffWorks.  (*See* Doc. 54 at 12–15; Arbitration Agreement at 1.)  Defendants are incorrect.

Plaintiff's claims pertaining to his full-time, permanent employment with Innovacon and/or the entity that acquired Innovacon and later became Defendant Abbott Rapid Dx North America, LLC arose after he ended his association with StaffWorks.  It is only once Plaintiff's temporary employment and association with StaffWorks ended that he entered into an independent, full-time, permanent employment relationship with Innovacon and/or the entity that acquired Innovacon and later became Defendant Abbott Rapid Dx North America, LLC.  That independent employment relationship lasted over 12 years.  Plaintiff's claims are not rooted in his temporary employment with StaffWorks nor do they pertain to any termination from StaffWorks.  *See Garcia v. Expert Staffing W.*, 73 Cal. App. 5th 408, 414 (Cal. Ct. App. 2021) (denying motion to compel arbitration where plaintiff's claims arose when she was employed at a different company prior to her job application with a staffing agency, which had a business relationship with her prior company, and "[n]o evidence support[ed] a finding that the parties intended to benefit [plaintiff's] former

employers, or that those former employers [were] prejudiced by not being able to enforce an arbitration agreement they never bargained for or executed."); *Howard v. Goldbloom*, 30 Cal. App. 5th 659, 667–70 (Cal. Ct. App. 2018) (affirming order denying motion to compel arbitration and finding former employee's breach of fiduciary duty and unjust enrichment claims were not rooted in prior employment relationship despite employee receiving majority of shares as compensation during employment); *c.f. Buckhorn v. St. Jude Heritage Med. Grp.*, 121 Cal. App. 4th 1401, 1408–09 (Cal. Ct. App. 2004) (compelling arbitration where plaintiff's claims based on defendant's alleged post-employment intentional and negligent interference with prospective economic advantage pertaining to an expectation of future income from patients derived from his prior employment with defendant were rooted in the contractual relationship between the parties); *see also Nicholas v. Grapetree Shores Inc.*, 392 F. App'x 7, 9 (3d Cir. 2010) (affirming and adopting district court's reasoning in concluding "[t]he claims do not involve 'Employee's dealings with Employer,' because his dealings with [defendant] with respect to his post-employment organizing efforts are not the dealings of an 'Employee' with his 'Employer.' Rather, they are the dealings of a union organizer with a company and its management."); *c.f. Lambert v. Austin Ind.*, 544 F.3d 1192, 1199 (11th Cir. 2008) (rejecting plaintiff's claim that termination disputes do not arise from or are related to employment with defendant because "[i]t is axiomatic that a termination from a job 'arises from or relates' to employment at a company.").  Rather, Plaintiff's claims are rooted in his subsequent employment with Innovacon and/or the entity that acquired Innovacon and later became Defendant Abbott Rapid Dx North America, LLC.

For these reasons, and the reasons discussed in the preceding section, the Court declines to equitably estop Plaintiff from refusing to arbitrate his claims against Defendants for the period of his full-time, permanent employment with Defendants.

In light of the Court's finding Plaintiff's claims against the Defendants are not subject to the Arbitration Agreement, the Court need not reach the Parties' remaining arguments.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### IV.   CONCLUSION

For the reasons discussed above, Defendants' motion to compel arbitration is **<u>DENIED</u>**.

**IT IS SO ORDERED.**

DATE:  July 19, 2023

_Ruth Bermudez Montenegro_
_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE